In the United States District Court
for the Middle District of Pennsylvania

James McBride                          :

    Plaintiff                     : (Case No. 3:13-CV-1737

    v.                            : (Judge Richard P. Conaboy)

Infinity Property & Casualty
Corporation et al.               :

    Defendant.                    :

_____

Memorandum

We consider here three motions by Defendant Infinity Property & Casualty Corporation ("Defendant") to compel discovery responses and/or strike objections by Plaintiff James McBride ("Plaintiff") to various subpoenas that Defendant had issued to third parties. These motions (Doc. 17, 19, and 21) had been fully briefed and are ripe for disposition. We shall consider them in their order on the docket.

**I.   Background.**

This case arises from a motor vehicle accident that occurred on December 17, 2012 in Brooklyn, New York. The Plaintiff alleges that he suffered physical injuries that required medical treatment when the vehicle he was operating was struck from the rear.

On the date the accident occurred, Plaintiff was a covered person pursuant to an automobile insurance policy issued by the Defendant on June 23, 2012. Pursuant to that policy, Plaintiff had coverage for first party medical expenses in the amount of

1

$5,000.00.  When Plaintiff made a claim for payment in that amount to defray the cost of medical treatment allegedly received in connection with the accident, Defendant declined to render payment.

Defendant's basis for refusing to extend the coverage provided by its policy is its conviction that Plaintiff misrepresented his state of domicile at the time he made his application for insurance.  Plaintiff had represented on his application that he was a Pennsylvania resident living in Bushkill, Pennsylvania. Defendant contends that its investigation reveals that Plaintiff was actually a resident of New York at the time he purchased the policy in question.  This, Defendant contends, was a material misrepresentation that exonerates it from its obligation to provide the first party medical benefits which are the bone of contention here.

Plaintiff filed suit in the Lackawanna County Court of Common Pleas seeking recovery of first party medical benefits under the insurance contract and damages pursuant to the Pennsylvania Bad Faith Statute.  Defendant, an Alabama corporation, then removed the case to this Court.

## II.  **Legal Standard.**

Federal Rule of Civil Procedure 26 (b)(1) provides in relevant part:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense -

2

including the existence, description, nature, custody, condition, and location of any documents or tangible things and the identity and location of persons who know of any discoverable matter... .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 establishes a liberal discovery policy, Great West Life Assurance Company v. Levithan, 152 F.R.D. 494, 497 (E.D.Pa. 1994).  Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information.  Hicks v. Big Brothers/Big Sisters of America, 168 F.R.D. 528, 529 (E.D.Pa. 1996); Stabilus v. Haynsworth, Baldwin, Johnson, and Greaves, P.A., 144 F.R.D. 258, 265-66 (E.D.Pa. 1992)(when there is no doubt about relevance a court should tend toward permitting discovery).  Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence.  Callahan v. A.E.D., Inc. 947 F.Supp. 175, 177 (W.D.Pa. 1996); Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D.Pa. 1996).

Although "the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." Stabilus, 144 F.R.D. at 265.  The Court

3

will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relating to confidential or privileged information.  S.S. Fretz, Jr., Inc. v. White Consolidated Industries, Inc., No. 90-1731, 1991 W.L. 21655, at 2 (E.D.Pa. Feb. 15, 1991).

The burden is on the objecting party to demonstrate in specific terms why a discovery request is improper.  Hicks, 168 F.R.D. at 529; Goodman v. Wagner, 553 F.Supp. 255, 258 (E.D.Pa. 1982).  The party objecting to discovery must show that the requested materials do not fall "within the broad scope of relevance...or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure...." Burke v. New York City Police Department, 115 F.R.D. 220, 224 (S.D.M.Y. 1987).

**III. Discussion.**

1.  Defendant's Motion to Strike Objections and to
    Compel Discovery Responses (Doc. 17).

Defendant's Motion (Doc. 17) seeks to compel responses to its requests for production numbered 11, 14, 15, 17, 18, 19, 20, 21, 22, 23, and 25. [1]  Defendant's motion also requests that the Court

---

[1] Plaintiff's Brief in Opposition to Defendant's motion indicates that its objection to production request No. 17 has been withdrawn and , as such, the Court need not consider it.

strike objections to subpoenas it had directed to two banks where Plaintiff maintains accounts.   We shall consider these requests in turn with the previously discussed legal principles in mind.

Defendant's production request no. 11 requests, essentially, Plaintiff's litigation file with respect to his third party action against the tortfeasor's insurer.  Because Plaintiff's claim in this case concerns only his right to recoup $5,000.00 in first party medical benefits from the Defendant, the Court will not permit discovery into the third party case.  The Court regards such information as irrelevant to the question whether Plaintiff incurred medical costs aggregating to $5,000.00 in connection with the accident.  The answer to that question can be gleaned from the records of the physicians who treated Plaintiff or, if necessary, by deposing those physicians.  There is no need to intrude into Plaintiff's litigation file, which includes documents that generally fall under the protection of the attorney/client privilege, when the relevant information is easily obtainable from other reliable sources.

Defendant's production request no. 14 seeks tax returns (local, state, and federal) from the years 2007 to present. Inasmuch as Plaintiff has admitted that he did not move to Pennsylvania until April of 2012 (see Doc. 25 at 8), the Court sees no relevance in his tax returns for the years 2007 through 2011. Plaintiff, however, will be directed to provide Defendant a copy of

5

his 2012 tax return because his residence as stated on that
document is germane to the question whether he was a Pennsylvania
domiciliary at the time he made application for insurance with
Defendant.

Defendant's production request no. 15 seeks copies of
Plaintiff's voter identification documents for the years 2007
through 2012.  Because Plaintiff has indicated that he resided in
Pennsylvania only since April of 2012, he will be required to
supply Defendant with his voter identification documents, to the
extent such documents exist, for 2012 and 2013 as they are,
potentially, germane to the question of his domicile at the time of
his application for insurance and the accident in question.

Defendant's production request no. 18 seeks copies of all
statements for any bank accounts Plaintiff owned, individually or
jointly, in any jurisdiction for the period from June 23, 2011 to
the present.  Because such statement could shed light on the extent
of Plaintiff's daily travel - - germane because his policy
application indicated that he would generally be within a 50 mile
radius of Bushkill, Pennsylvania - -, Plaintiff will be directed to
provide all such statements.  However, these statements need be
furnished only for the period from January 1, 2012 through May 31,
2013. [2]  Plaintiff may redact the balances and amounts of

---

[2] Plaintiff's complaint indicates that he remained a Pennsylvania domiciliary as of May 31, 2013.  (Doc. 1-1, p. 5, ¶ 1).

transactions detailed on these documents because how much money he
has is not Defendant's concern nor is it relevant to his claim.

Defendant's production request no. 19 seeks Plaintiff's credit
card statements for the period June 23, 2011 to the present. [3]
These documents are also relevant to demonstrate the extent and
frequency of Plaintiff's travel.  Plaintiff will be directed to
furnish Defendant with copies of such documents for the period from
January 1, 2012 through May 31, 2013.  Like Plaintiff's bank
account records, these may be redacted to obscure the balances on
the accounts and the amounts of the itemized transactions.

Defendant's production request no. 20 seeks documents related
to Plaintiff's receipt of any government benefits for the period
2007 to present.  This request is temporally overbroad.  Plaintiff
will be directed to furnish any documents in this category for the
period January 1, 2012 through May 31, 2013.

Defendant's production request no. 21 seeks documents (e.g.
titles, registration cards, loan documents, invoices for repairs,
etc.) related to the vehicle Plaintiff was driving at the time of
the accident for the period 2007 to the present.  Once again,
Defendant's request is overly broad.  Plaintiff will be directed to
provide all documents regarding the ownership, registration or
repair of the subject vehicle from the period of January 1, 2012

---

[3] Defendant does not provide the Court with an explanation as to why June 23, 2011 should be a significant date.

through May 31, 2013.

Defendant's production request no. 22 seeks "all ledgers, journals, accounting records, tax records, worker's compensation records, state filings, permits and licenses regarding J. McBride Construction."  Because Plaintiff acknowledged in his brief that J. McBride Construction "never got off the ground" (Doc. 25 at 12), these documents, which would obviously be relevant and discoverable, are likely not available inasmuch as they likely never existed.  The Court will not order the production of nonexistent documents.

Defendant's production request no. 23 seeks: "all documents regarding any real property you owned for the years 2007 to present.  This includes mortgages, titles, liens and tax records." The Court must observe that the fact that a man owns property in more than one state does not shed much light on his state of domicile.  Nevertheless, Plaintiff will be directed to provide documents responsive to Defendant's production request No. 23 for the period from January 1, 2012 through May 31, 2013.

Defendant's production request No. 25 seeks "all letters, faxes, correspondence, notes, memos, e-mails, records, bills, invoices, payments, agreements, leases, contracts and checks" between Plaintiff and his landlords in Bushkill, Pennsylvania and Brooklyn, New York.  Plaintiff will be directed to furnish Defendant with copies of all such documents that are related to the

8

landlord/tenant relationship between Plaintiff and these landlords
for the period January 1, 2012 through May 31, 2013.  Plaintiff
need not produce correspondence of a purely personal nature between
him and these landlords.

With respect to Defendant's request that this Court strike
Plaintiff's objections to subpoenas Defendant directed to First
Keystone Community Bank of Berwick, Pennsylvania and Capital One
Bank of Brooklyn, New York, the Court notes that these subpoenas
have no temporal limitation.  Defendant is not entitled to such
open-ended discovery into Plaintiff's financial affairs.  Defendant
is entitled to access the records of these banks in the relevant
time period - - January 1, 2012 through May 31, 2013.  To that end,
Defendant will be directed to reissue these subpoenas as temporally
limited to the relevant time frame.  Plaintiff is placed on notice
that the Court will deny future objections to these subpoenas if
reissued as per the aforementioned time parameters.

2.   Defendant's Motion to Strike Objections to its Subpoena
     Directed to the New York Office of Temporary and
     Disability Assistance (Doc. 19)

This motion seeks to compel a response to the above-referenced
subpoena (Doc. 19-3).  While the information sought is potentially
relevant to resolution of the main issue in this case, its temporal
scope is overly broad in light of Plaintiff's acknowledgment that
he was a New York resident until April of 2012.  Accordingly,

9

Defendant is directed to reissue the subpoena, as redacted in Document 19-3, for the period from January 1, 2012 through May 31, 2013.  Should Defendant do so, Plaintiff is cautioned against further objection to this subpoena.

     3.    Defendant's Motion to Strike Objections to its Subpoena Directed to the Doe Fund, Inc. (Doc. 21).

This motion seeks to compel a response to the above-referenced subpoena (Doc. 21-3).  Here again the information sought is potentially relevant but temporally over broad.  Accordingly, Defendant is directed to reissue this subpoena, as redacted in Document 21-3, for the period from January 1, 2012 through May 31, 2013.  Provided that Defendant refashions this subpoena as directed, Plaintiff is instructed to lodge no further objection.

**IV.  Conclusion.**

An Order consistent with the preceding discussion will be issued simultaneously herewith.

BY THE COURT

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

10